IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 03-cv-1656-WDM-CBS

DAPHNE R. CLEMENT,

    Plaintiff,

v.

SEARS, ROEBUCK AND CO.,

    Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on the motion for summary judgment filed by defendant Sears, Roebuck and Co. I have reviewed the parties' written arguments and their summary judgment evidence and find that oral argument is not required. For the reasons that follow, the motion will be granted in part.

### Background[1]

Plaintiff Daphne Clement (Clement) was employed by Sears, Roebuck and Co. (Sears) from April 26, 1995 through October 2, 2002. During her employment with Sears, she held the titles of Sales Associate, Sales Manager, and Assistant Store Manager at different Sears retail stores. Clement claims age discrimination under

---

[1] Unless otherwise noted, the background facts, drawn from the parties' factual statements and supporting evidence, appear to be undisputed.

the Age Discrimination Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, and also the tort of outrageous conduct.

Clement began to work for Sears on April 26, 1995 as a sales associate in the cosmetics department of a Sears store in Aurora, Colorado. After just nine months she was promoted to Sales Manager of the Cosmetic and Fine Jewelry Department. In June 1996, she transferred to the same position at Sears' store in Westminster, Colorado. While in Westminster, Clement excelled and won many different company awards.

In 2001, as part of a company reorganization, Sears eliminated its Sales Manager positions, transferring many of their duties to the Assistant Store Manager (ASM) positions. In order to fill new ASM positions, Store Managers and District Managers participated in round-table discussions. Through this process, Clement was promoted to ASM over the Brand Central division in Sears' Longmont store in January 2002. District Manager David Ikkala (Ikkala) was ultimately responsible for this decision. Clement's new position included hiring, firing, training, and supervising sales associates in Brand Central, which is a combination of the electronics and appliance departments.

Clement was fifty-eight years old when she began working at Longmont in February 2002. Four months later, Jill Laird (Laird), who was twenty-three, became the new Store Manager of the Longmont Sears. Although Laird's predecessor had no negative comments about Clement, less than one month after Laird took over, she

placed Clement on a "Performance Plan for Improvement" (PPI). Two days later, on August 15, 2002, Laird gave Clement her semi-annual review. Clement received a score of two out of five (2 = some expectations met) in both the leadership and results sections. Then, Clement received a negative written PPI follow-up report on September 2, 2002 and another on September 24, 2002, when she was informed that she would be terminated on October 6, 2002. At some point in this process, Laird made a recommendation to Ikkala that Clement be fired, and Ikkala accepted this recommendation.

Clement was replaced by Jason Lopez. Sears claims that Lopez was forty years old at the time, but Clement claims he was only about twenty-eight. She claims that she was fired because of age discrimination. Sears denies this, claiming she was fired because of poor performance.

Clement also brings a claim of outrageous conduct. She bases this claim on the actions of Jill Laird and Michelle Walton, District in-store Marketing Manager. Clement claims that Laird confronted her one day on the sales floor, "reamed" her for not having a refrigerator plugged in, and told her she had "failed." Then, Walton asked Clement "why don't you just quit now." Sears argues that Clement's claim is barred by the exclusivity provisions of the Colorado Workers Compensation Act, Colo. Rev. Stat. § 8-41-102. Alternatively, Sears argues that these facts do not rise to the level of outrageous conduct.

Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

A plaintiff alleging employment discrimination may prove intentional discrimination directly or indirectly. Under the direct approach, plaintiffs proceed "by presenting direct or circumstantial evidence that age was a determining factor in [their] discharge." *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996) (quoting *La Montagne v. American Convenience Prods., Inc.*, 750 F.2d 1405, 1409 (7th Cir. 1984)). However, more typically, cases are brought under the indirect analysis set forth in *McDonnell Douglas Corp v. Green*, which provides a burden-shifting framework for assessing indirect, or circumstantial, evidence. 411 U.S. 792, 802-804 (1973); *see generally St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-

508 (1993); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). However, plaintiffs can also proceed directly, "by presenting direct or circumstantial evidence that age was a determining factor in [their] discharge." *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996) (quoting *La Montagne v. American Convenience Prods., Inc.*, 750 F.2d 1405, 1409 (7th Cir. 1984)).

Under the *McDonnell Douglas* framework, plaintiffs bear the initial burden of presenting a *prima facie* case of discrimination. *Kendrick*, 220 F.3d at 1226. The essential purpose of the *prima facie* test is to eliminate "the most common nondiscriminatory reasons for the plaintiff[s'] rejection." *Id.* at 1227 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)). *See also St. Mary's Honor Center*, 509 U.S. at 506 (*prima facie* case "in effect creates a presumption that the employer unlawfully discriminated against the employee") (quoting *Burdine*, 450 U.S. at 254) (alteration in quoted material). If plaintiffs establish a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *Kendrick*, 220 F.3d at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant presents such a reason, plaintiffs bear the "ultimate burden" of showing that these proffered reasons are a pretext for unlawful discrimination. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000).

To show pretext, a plaintiff must demonstrate that the defendant was more likely motivated by a discriminatory reason or that its proffered reason "is unworthy of credence." *Id.* (quotation omitted). *See Kendrick*, 220 F.3d at 1230 (three ways of showing pretext are: (1) evidence that the defendant's stated reason for the adverse action was false; (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or practice when making the adverse decision).

## Discussion

### 1.  Discrimination (Disparate Treatment) Claim

Clement argues her disparate treatment claims under both the *Greene* and *McDonnell Douglas* frameworks. Because I find that Clement has produced enough evidence to overcome summary judgment under *McDonnell Douglas*, I decline to decide if she could also do so under the *Greene* framework.

To establish a *prima facie* case of disparate treatment under the *McDonnell Douglas* framework, Clement "must show that '(1) [she] is within the protected age group; (2) [she] was doing satisfactory work; (3) [she] was discharged; and (4) [her] position was filled by a younger person." *Rivera v. City & County of* Denver, 365 F.3d 912, 920 (10th Cir. 2004) (quoting *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128). Sears does not dispute the fact that Clement has established a *prima facie* case, and I will assume that she has.

6

In response, Sears has met their burden of setting forth legitimate, non-discriminatory reasons for firing Clement.  First, Sears claims that she failed to adequately train, supervise and hold accountable poorly performing sales associates below her. Second, Sears claims that Clement was fired because her sales associates and Brand Central in Longmont did not perform up to expected levels.  Third, Sears claims that Clement repeatedly failed to meet presentation standards.  In support its claims, Sears argues that Clement did not complete certain required checklists. Specifically, they point to a checklist titled "Creating Customer Enthusiasm" (CCE). Sears also points out that Clement never placed any of her associates on a PPI plan. They claim that Clement's poor supervision resulted in a loss of over $70,000 in Brand Central protection agreement sales.

At this point, the burden shifts back to Clement to show evidence of pretext such that "a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

First, Clement disputes the facts that Sears relied on in making their decision to terminate her.  Simply demonstrating that Sears relied on incorrect facts when making their decision to fire her does not necessarily demonstrate pretext.  *Rivera*, 365 F.3d at 925. However, demonstrating that the evidence that Sears relied on is weak may allow a rational factfinder to infer that Sears' proffered reasons are actually pretextual.  *Id.* Clement denies all of the claims made by Sears about her poor performance, except the

7

fact that she never put any associate on PPI.  However, Clement claims that her associates were improving and did not need to be put on PPI.  In fact, Clement argues that her store was doing comparatively well during difficult times. Clement Dep. Ex. 2 at 174:7-10. She claims that they had the second-lowest sales decrease of any store in the district when she was put on PPI, and that her sales numbers increased in all but one of the months she was there.  *Id.* at 174:7-10, 173:2-5.

Along with her own testimony about these facts, Clement also points to the deposition testimony of Gerald H. Case, a former Sears store manager.  Case Dep. Ex. 6, at 74:4-17 . After inspecting Clement's sales reports, Case testified that store sales and profits were improving compared to 2001, and that from the figures, it appears that Clement was doing a good job.  *Id.*  As evidence that she was regularly training her associates, Clement points to "I know it" coupons, which her associates signed after they received training on different subjects.  Ex. 7. Case testified that "people don't sign those unless the training is done."  Case Dep. 35:24 to 36:1.  Clement also points out that she obtained written commitments to improve from her associates.  Ex. 8.

Second, Clement has produced evidence of other former Sears managers who feel that PPI was used to force them out of the company, despite the fact that they were performing well. This testimony also suggests the PPI process may be pre-determined. Donald Hatch, a former store manager testified that he had arguably the best performance in the whole district when he was put on PPI and told by Ikkala he would probably not get off. Hatch Dep. Ex. 3 at 35:10-16, 37:19-22. He was fifty-four at the time.

*See* Store General Managers Report Ex. 11 (GM Report). Another former manager, Cathy Zach, testified that until Ikkala took over, her leadership reviews were always above expectations. Hatch Dep. Ex. 5 at 18:14-21. However, Ikkala put her on PPI and told her that she had no chance of passing. *Id.* at 17:21-25. She was fifty-one at the time. *See* GM Report. Similarly, Gerald H. Case testified that in twenty-nine years he had not had a corrective interview, but soon after Ikkala took over, he put Case on PPI and told he probably couldn't get off. Case Dep. at 20:8-24. Case was fifty-six at the time. *See* GM Report. In addition, former District Manager Sam Robinson testified that despite his good performance, he was put on PPI. When he expressed his confusion, Ikkala reportedly told him "[t]his isn't about results, this is about making people go away." Robinson Dep. Ex. 1 at 51:21. Clement also presents evidence that of the fifteen Sears stores in the district, ten had their general managers leave between February 2, 2002 and August 8, 2003. *See* GM Report. Finally, against this backdrop, Clement testifies that in her own case, when she was put on PPI, Laird told her that she did not think she could get off.[2]

---

[2] The timing of this comment is not entirely clear. Clement mentions the comment twice in her response brief. Page 5 of Clement's response mentions the comment and cites to her Deposition at 75:13-16. However, the text of the brief does not say when the comment was made, and the small portion of the deposition that was provided is unclear on this point. On page 8 of her response Clement claims that the comment was made on August 13, 2002, when she was first put on PPI, but does not cite any evidence to support this assertion. However, it appears that Sears does not dispute this claim. Reply at 3. Given this, and the fact that I am to construe the evidence in the light most favorable to Clement, I will assume that the comment was made on August 13, 2002.

9

I find that the cumulative weight of the above evidence[3] would be sufficient to allow a rational factfinder to conclude that Sears' proffered reasons for firing Clement were merely pretext, and infer that age was a determining factor. Although many of the pieces of evidence, when viewed in isolation, would not be sufficient, I must look at the evidence in its totality. *Beard v. Seagate Tech., Inc.*, 145 F.3d 1159, 1174 (10th Cir. 1998). Viewed in this light, Clement's evidence raises a reasonable inference of Sears' pretext. *See Reeves v. Sanderson Plumbing Prods. Inc*, 530 U.S. 133, 147 (2000) ("[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation . . . . [T]he factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt'") (emphasis in original).

Finally, I note that Sears has suggested that I give presumptive weight to the fact that the Ikkala both promoted and later fired Clement. Although this is certainly relevant and significant evidence, neither of the cases that Sears relies on would give

---

[3] Although Clement also offers additional evidence of pretext, I will not discuss it in detail, as I find it only minimally probative of pretext. In general, Clement argues that she was given less time on PPI than other employees, that Sears was more tolerant of poor performance from younger employees, and that she was understaffed during a difficult transition time. I find the first and second of these argument weak because Clement fails to identify similarly situated younger employees who were treated more favorably. See Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997) ("Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline"). In addition, Clement has failed to cite any authority or explain how evidence that she was short-staffed in one area is significantly probative of pretext.

*presumptive* weight to this scenario. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) *and Proud v. Stone*, 945 F.2d 796, 797-99 (4th Cir. 1991). These cases merely speak of a strong inference that may arise in similar situations. Therefore, as the Seventh Circuit has noted, it is misleading to suggest that a presumption is created. *Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 747 (7th Cir. 2002). In addition, Ikkala testified in his deposition that he did not have any knowledge of Clement's age. Thus, I find that there is a genuine issue over whether Ikkala knew Clement's age when he promoted her a few years earlier.

2. Outrageous Conduct Claim

In Colorado, the Workers' Compensation Act normally "provides the exclusive remedy for compensation of an employee by an employer for work-related injury." Colo. Rev. Stat. §§ 8-41-102 (2005); *Triad Painting Co. v. Blair,* 812 P.2d 638, 641 (Colo. 1991). Nonetheless, Clement argues that her claim is not pre-empted by the Act under *Schwindt v. Hershey Foods, Corp.* 81 P.3d 1144 (Colo. App. 2003). Under *Schwindt,* intentional torts by the employer or the employer's alter ego will not be pre-empted "if the employer deliberately intended to cause the injury and acted directly, rather than constructively through an agent." *Id.* (citing *Ventura v. Albertson's, Inc.,* 856 P.2d 35, 39 (Colo. App. 1992).

However, the undisputed facts of this case clearly do not fit this exception. Here, the complained of conduct is that of a district in-store marketing manager, and the general manager of a branch store. Although in management positions, Laird and

Walton are by no stretch of the imagination the "alter ego" of the Sears Corporation, nor can their actions be construed as Sears acting directly. *See Kandt v. Evans,* 645 P.2d 1300, 1304 (Colo. 1982) ("The fact that Goldstein was the plaintiff's supervisor does not make him the alter ego of the employer.").

As Clement could not, and does not argue any other reason why her outrageous conduct claim is not pre-empted by the Act, I will grant summary judgment as to this claim.

Accordingly, it is ordered:

1.   Defendant's motion for summary judgment, filed December 9, 2004, is granted in part.

2    Plaintiffs' claims for outrageous conduct is dismissed.

3    The case remains pending for trial on the age discrimination claim brought by plaintiff Clement.

DATED at Denver, Colorado, on September 30, 2005.

                                                BY THE COURT:

                                                /s/ Walker D. Miller
                                                United States District Judge